#400

NIQA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRIAN MATTEO<br>3509 Reserve Drive<br>Philadelphia, PA 19145 | : | CIVIL ACTION NO. **18  2841** |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| HERSHA HOSPITALITY<br>MANAGEMENT d/b/a LACROIX<br>RESTAURANT AT THE RITTENHOUSE<br>HOTEL<br>44 Hersha Drive<br>Harrisburg, PA 17102<br><br>210 West Rittenhouse Square<br>Philadelphia, PA 19103 | : | |
| Defendant. | : | |

## COMPLAINT CIVIL ACTION

Plaintiff, Adrian Matteo ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Hersha Hospitality Management d/b/a Lacroix at the Rittenhouse Hotel ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

### PARTIES

2. Plaintiff, Adrian Matteo, is an adult American citizen who currently maintains a residence at 3509 Reserve Drive, Philadelphia, PA 19145.

3. Defendant, Hersha Hospitality Management d/b/a Lacroix Restaurant at the Rittenhouse Hotel is a professional corporation operating and existing under the laws of the Commonwealth of Pennsylvania, with a business office address of 44 Hersha Drive, Harrisburg, PA 17102 and a place of business at 210 West Rittenhouse Square, Philadelphia, PA 19103.

4. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5. Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

7. On or about September 19, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, thereby satisfying the requirements of 42 U.S.C. §§ 2000e5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge Number 530-2017-03979. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

8. By correspondence dated April 18, 2018, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against the Defendant.

9. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

10. This Court has original jurisdiction over Plaintiff's ADA claim, pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court had pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative fact as his federal claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and conducts business therein, and the events giving rise to this action occurred in this district.

## **FACTUAL BACKGROUND**

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were fully set forth at length herein.

14. Plaintiff began his employment with Defendant on or around March 22, 2017 as a Server Assistant.

15. Plaintiff's job duties consisted of workers with Defendant's Servers to deliver food to customers, clean and re-set tables and generally assist with service during his scheduled shift.

16. During Plaintiff's employment with Defendant he performed his job well and received occasional praise for his work and did not receive discipline.

17. Prior to Plaintiff's hire, and during his interview with Defendant, he disclosed to Kevin Klienschmidt ("Mr. Klienschmidt"), Defendant's Director of Human Resources that he was diagnosed with Sleep-Deprived Epilepsy in or around 2010.

18. Plaintiff explained to Mr. Klienschmidt his symptoms and disclosed the medication he takes to relieve his symptoms from his disability.

19. Plaintiff's Sleep-Deprived Epilepsy is a disability within the meaning of the ADA as it effects major life activities such as sleeping.

20. Plaintiff explained the severity of his condition to Mr. Klienschmidt but stated that he had not had seizures as a result of his disability for quite some time.

21. Defendant hired Plaintiff knowing about his disability.

22. When Plaintiff began working for Defendant, he had just come from a night-shift job, which he left to work for Defendant.

23. However, Plaintiff worked his night-shift job less than forty-eight (48) hours before beginning work with Defendant.

24. At Defendant's request, Plaintiff had one day of orientation on or about March 22, 2017, and was scheduled for a full, 10-hour shift on or about March 27, 2017, from 6:00am to 4:00pm.

25. During Plaintiff's shift on or about March 27, 2017, he worked the entire shift without a break as Defendant was very busy.

26. Plaintiff's next scheduled shift was on or about March 28, 2017, and Plaintiff arrived for this shift on time at approximately 6:00am, despite being extremely exhausted.

27. At or around 11:30am on or about March 28, 2017 Plaintiff had a seizure at work, which was caused by the abrupt change in his sleeping schedule.

28. During this seizure, Plaintiff fell and cut his face and was immediately taken to the Emergency Room to address the seizures and facial laceration.

29. While at the hospital, John Paul Cantave ("Mr. Cantave"), Defendant's Director of Outlets reassured Plaintiff's Parents that Defendant would work him to determine a tiered schedule to accommodate Plaintiff's start time to avoid any further seizures.

30. Upon Plaintiff's release from the hospital, Plaintiff's doctor took him out of work for one week.

31. Because of Plaintiff's doctor's orders, Plaintiff missed his next two scheduled shifts with Defendant.

32. However, after less than one week of being out of work, Defendant asked that Plaintiff return for a shift on or around April 2, 2017.

33. Against his doctor's orders, Plaintiff returned to work on or around April 2, 2017, but requested that his start time be changed from 6:00 am to 8:00 am to accommodate his disability.

34. The next day, on or around April 3, 2017, Plaintiff was scheduled to work at 8:00am.

35. When Plaintiff arrived, he was asked to meet with one of Defendant's Restaurant Manager's, Samir Nasreddine ("Mr. Nasreddine").

36. Mr. Nasreddine began the meeting by asking Plaintiff how he felt about 6:00am.

37. Plaintiff responded that, at this time, it would be better for him to utilize the tiered schedule suggested and agreed to by Mr. Cantave, so that he could become accustomed to the 6:00am time.

38. Mr. Nasreddine agreed and seemed satisfied with regard to Plaintiff's meeting with him.

39. However, later that day, Mr. Nasreddine told Plaintiff that he was needed at 6:00am. Mr. Nasreddine went on to say "We've accommodated you enough." And "we can't be impartial," "it sends the wrong message to employees." Mr. Nasreddine ended the meeting by

saying "live it up while you can" because Sunday, April 9, 2017 was going to the last day Plaintiff could arrive at 8:00am.

40. The following day, on or around April 4, 2017, Plaintiff came into work and immediately spoke with Mr. Nasreddine. Plaintiff expressed to him that he felt he was being forced to work at 6:00am and not being accommodated.

41. Mr. Nasreddine did not move in his position.

42. Plaintiff then asked to speak with Defendant's Human Resources.

43. Plaintiff was summoned instead to speak with Sylvan Briens ("Mr. Briens"), Defendant's Food and Beverage Director. Mr. Briens told Plaintiff that his schedule would no longer be modified, stating "we gave you an entire week," and "its not fair to our managers." Mr. Briens then asked Plaintiff to turn in his keys and uniform; abruptly terminating his employment.

44. Accordingly, Plaintiff believes and avers that the Defendant terminated him on account of his disability and requests for accommodation in connection thereto in violation of the ADA.

### COUNT I
### THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C § 12101, *ET SEQ.*
### DISCRIMINATION AND RETALIATION

45. Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

47. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

48. Plaintiff's Sleep-Deprived Epilepsy substantially limits his ability to engage in major life activities.

49. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

50. Despite his disability, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation.

51. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining reasonable accommodations for Plaintiff, and by terminating Plaintiff's employment because of his actual and/or perceived disability and request for reasonable accommodations in connection thereto.

52. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *ET SEQ.*
## DISCRIMINATION AND RETALIATION

53. Paragraphs 1 through 52 are hereby incorporated by reference, as though the same were fully set forth at length herein.

54. Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, due to his Sleep-Deprived Epilepsy because this condition substantially limits his ability to perform major life activities.

55. Plaintiff was/is able to perform the essential functions of his job with or without a reasonable accommodation.

56. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of his actual and/or perceived disabilities and in retaliation for his requests for a reasonable accommodation.

57. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

58. The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

                              Respectfully submitted,

                              MURPHY LAW GROUP, LLC

By: _____
                              Michael Murphy, Esq.
                              Murphy Law Group, LLC
                              Eight Penn Center, Suite 2000
                              1628 John F. Kennedy Blvd.
                              Philadelphia, PA 19103
                              TEL: 267-273-1054
                              FAX: 215-525-0210
                              murphy@phillyemploymentlawyer.com
                              *Attorney for Plaintiff*

Dated: July 6, 2018

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.